# EXHIBIT 1

Server _____
Title  Process Server
Date 7-15-10  Time 4:00 pm
P/S _____

David R. Olsen (2458)
Paul M. Simmons (4668)
John C. Hansen (5286)
DEWSNUP, KING & OLSEN
36 South State Street, Suite 2400
Salt Lake City, Utah 84111-0024
Telephone: (801) 533-0400
Fax: (801) 363-4218

Attorneys for Plaintiffs

---

IN THE THIRD JUDICIAL DISTRICT COURT,

WEST JORDAN, SALT LAKE COUNTY, STATE OF UTAH

| TARA BERENDES, | SUMMONS |
|---|---|
| Plaintiff, | |
| vs. | Civil No. 100405451 |
| GEICO CASUALTY COMPANY, a corporation, | Judge: Stephen Roth |
| Defendant. | |

THE STATE OF UTAH TO THE ABOVE-NAMED DEFENDANT:

**GEICO CASUALTY COMPANY, a corporation**
Registered Agent:
Carl A. Hulbert
2666 South 2000 East, #103
Salt Lake City, Utah 84109

You are hereby summoned and required to file an Answer in writing to the attached

1

03/17/2010  11:34  18585135197                    GEICO CLMS                              PAGE  04/20
Mar 15 10 04:27p    Hulbert Insurance Agency                  801-467-6805                 p.3

Complaint with the Clerk of the below-entitled Court and to serve upon or mail to David R. Olsen of Dewsnup, King & Olsen, plaintiff's attorneys, 2400 Key Bank Tower, 36 South State Street, Salt Lake City, Utah 84111, a copy of said Answer within 30 days after service of this summons upon you.

If you fail so to do, judgment by default will be taken against you for the relief demanded in said Complaint, which has been filed with the Clerk of the said Court and a copy of which is hereby annexed and herewith served upon you.

DATED this 12th day of March, 2010.

*Paul M. Simmons*

David R. Olsen
Paul M. Simmons
John C. Hansen
DEWSNUP, KING & OLSEN
36 South State Street, Suite 2400
Salt Lake City, Utah 84111
Telephone: 801-533-0400

Clerk of the Court
Third Judicial District Court
  Of Salt Lake County, West Jordan
8080 South Redwood Road, Suite 1701
West Jordan, Utah 84088

2

03/17/2010  11:34  18585135197                    GEICO CLMS                                   PAGE  05/020
Mar 15 10 04:27p        Hulbert Insurance Agency              801-467-6805                     p.4

FILED
2010 MAR 11 PM 3:34
WEST JORDAN DEPT.

David R. Olsen (2458)
Paul M. Simmons (4668)
John C. Hansen (5286)
DEWSNUP, KING & OLSEN
36 South State Street, Suite 2400
Salt Lake City, Utah 84111-0024
Telephone: (801) 533-0400
Fax: (801) 363-4218

**Please Date Stamp
COPY and RETURN**

Attorneys for Plaintiffs

IN THE THIRD JUDICIAL DISTRICT COURT,

WEST JORDAN, SALT LAKE COUNTY, STATE OF UTAH

| TARA BERENDES, | **COMPLAINT AND JURY DEMAND** |
|---|---|
| Plaintiff, | |
| vs. | Civil No. _____ |
| GEICO CASUALTY COMPANY, a corporation, | Judge: _____ |
| Defendant. | |

Plaintiff, Tara Berendes, through her counsel, complains of defendant and alleges as follows:

### PARTIES AND JURISDICTION

1. Plaintiff brings this action for herself and as assignee of the Estate of Thad Goodman, deceased.

03/17/2010  11:34   18585135197                GEICO CLMS                           PAGE 06/020
Mar 15 10 04:28p      Hulbert Insurance Agency              801-467-6805                 p.5

2.  Defendant, GEICO Casualty Company ("GEICO"), is a corporation that, at all times relevant to this action, was doing business as an insurance company in the state of Utah.

3.  This Court has jurisdiction over this matter under section 78A-5-102(1) of the Utah Code.

## GENERAL ALLEGATIONS

4.  On June 1, 2004, Josh and Tara Berendes were newlyweds returning from their honeymoon en route to Colorado, traveling southbound on I-15 in Salt Lake County, Utah.

5.  On June 1, 2004, Thad Goodman was driving northbound on I-15 in Salt Lake County, Utah, to his home in Taylorsville, Utah, to celebrate the six-month anniversary of his daughter's birth.

6.  Mr. Goodman was driving at an excessive speed through a construction zone. He drifted into the median of I-15, over-corrected twice, rolled through the median, became airborne, and collided with the Berendeses' southbound vehicle.

7.  Mr. Goodman's vehicle burst into flames on impact, and Mr. Goodman was killed in the accident.

8.  The Berendes vehicle sustained heavy damage from the collision and started on fire.

9.  Tara Berendes was unconscious and pinned in her car.

10. Another motorist used his pickup to separate the burning vehicles, saving Mrs. Berendes's life.

11. Tara Berendes was life-flighted to the University of Utah Hospital, where she remained unconscious for some three weeks.

12. Mrs. Berendes sustained severe injuries, including, but not limited to, a severe closed head injury, full thickness facial burns, knee lacerations, lacerations to her left kidney and spleen, scalp laceration, left foot laceration, a ruptured diaphragm, and pulmonary contusion. Mrs. Berendes also had treatment complications, including, but not limited to, pneumonia, adult respiratory distress syndrome (ARDS), deep vein thrombosis, pancreatitis, infections, foot ulcer, coma, and failure to wean from a ventilator.

13. Josh Berendes also sustained injuries in the accident, but his injuries were less and have been fully settled.

14. Thad Goodman was a named insured under a policy of automobile liability insurance issued by the defendant, GEICO, which had liability limits of $25,000 per person for bodily injury and $15,000 for property damage.

15. Within a day after the accident, GEICO had notice of the accident, the death of its insured, and the injuries to Tara Berendes.

16. Within a few days, GEICO was on notice that the accident was caused by its insured.

03/17/2010 11:34 18585135197 GEICO CLMS 801-467-6805 PAGE 08/070
Mar 15 10 04:25p Hulbert Insurance Agency p.7

17. Within two weeks, GEICO had information that Tara Berendes's medical bills would likely exceed $1,000,000 and that the Berendeses' relatively new car was a total loss and would exceed the property damage limit of Mr. Goodman's policy.

18. On June 23, 2004, counsel for the Berendeses wrote to GEICO demanding to know the policy limits, requesting a certified copy of Mr. Goodman's GEICO policy, and giving information about Tara Berendes's severe injuries.

19. On July 1, 2004, counsel for the Berendeses gave GEICO more information and some of Mrs. Berendes's medical records.

20. Instead of immediately offering its bodily injury and property damage limits, GEICO requested a Medical and Wage Authorization to be signed by Tara Berendes without any indication of whether GEICO would settle.

21. Having had no substantive response to their prior requests, on August 4, 2004, the Berendeses demanded the policy limits and requested again a certified copy of Mr. Goodman's policy.

22. In response to their August 4, 2004 request, GEICO only sent the Berendeses a computer printout of coverages that it claimed to be the declaration sheet of Mr. Goodman's policy, but there was no name on the printout.

23. GEICO did not provide the Berendeses or their counsel with a certified copy of Mr. Goodman's policy until November 17, 2004, almost five months after the Berendeses first requested it.

24. GEICO knew or should have known that the Berendeses' third-party claims against Mr. Goodman or his estate exceeded Mr. Goodman's bodily injury liability limits many times over, yet it failed to takes steps to immediately settle the claims.

25. GEICO was in a position to understand that the Berendeses did not have health insurance, that Tara Berendes's lengthy hospitalization and recovery would prevent her from timely going to work and earning an income, that Tara Berendes's hospitalization would put immense financial pressure on the Berendeses, and that GEICO had the ability to immediately extinguish the exposure to Mr. Goodman's family and estate by immediately paying its $25,000 limits to Mrs. Berendes, yet it chose not to do so.

26. GEICO knew or should have known that it needed to provide the Berendeses and their counsel with a certified copy of Mr. Goodman's automobile liability policy and declarations before it could settle the Berendeses' claims, yet it delayed doing so for nearly five months.

27. GEICO knew or should have known that delaying payment of the bodily injury liability coverage limit of $25,000 would impede Tara Berendes's ability to receive underinsured motorist (UIM) coverage from her own insurer, Progressive Insurance, yet GEICO remained dilatory in settling Mrs. Berendes's claim.

28. It was foreseeable to GEICO that delaying settlement of Mrs. Berendes's claim against Mr. Goodman would have the following negative consequences on Mrs. Berendes and on its insured:

   a. They would have to incur attorney's fees, which are typically one-third or more of any recovery.

   b. They would incur litigation expenses.

   c. They would be forced to revisit the details of the accident and of Mr. Goodman's death in protracted litigation that would cause stress and distress to Mrs. Berendes and the Goodman family.

   d. The Goodman family would be forced to initiate estate proceedings.

   e. GEICO would expose its insured to a large judgment in excess of its policy limits.

   f. GEICO's actions could well precipitate bad-faith claim litigation.

29. On September 16, 2004, GEICO sent a letter claiming that it left a voice message with the Berendeses' attorney on August 24, 2004, tendering its policy limits conditioned on (1) a waiver of any UIM subrogation claim by the Berendeses' auto insurer, Progressive; (2) making the University of Utah Hospital a co-payee on the check; and (3) providing a tax identification number.

30. Counsel for the Berendeses never received the alleged voice message.

31. On September 21, 2004, counsel for the Berendeses wrote to GEICO denying that the alleged tender was made, noting that GEICO had never addressed the

-6-

property damage claim, and indicating that there could not be a waiver of the UIM subrogation claim because GEICO had never offered its liability limits.

32. On September 22, 2004, GEICO offered to tender checks to the Berendeses but with their insurer, Progressive, as a co-payee on the checks. Progressive had no claim to any part of the liability payments under GEICO's policy.

33. GEICO eventually offered its policy limits on all coverages without conditions.

34. Tara Berendes rejected GEICO's offer as too late.

35. Mrs. Berendes then brought an action against Mr. Goodman (later amended to substitute Mr. Goodman's estate), Geneva Rock Products, Inc. (the general contractor on the I-15 construction project where the accident occurred), Riley Transportation Consultants, Inc. (a subcontractor on the project), and the Utah Department of Transportation. Mr. Goodman and his estate will be referred to collectively as "Goodman."

36. After three years of litigation, Mrs. Berendes fully settled with Geneva Rock Products, Inc., Riley Transportation Consultants, Inc., and the Utah Department of Transportation.

37. Mrs. Berendes then reached an interim settlement with Mr. Goodman's estate. Under the terms of the settlement, the court would determine fault and damages as they related to Goodman's liability to Mrs. Berendes.

-7-

38. Following a bench trial, the court entered findings of fact and conclusions of law finding that Goodman was at least 40% at fault in causing the accident, that Mrs. Berendes's past medical expenses and the present value of her anticipated future medical expenses were over $2 million, that her past lost income and present value of her anticipated future lost income was over $1.5 million, that pre-judgment interest was over $200,000, that her non-economic damages were over $1 million, and that a judgment against Mr. Goodman's estate for $1,500,000 was reasonable and warranted.

39. The court then entered a judgment against the estate of Mr. Goodman for $1,500,000 and approved the interim settlement agreement.

40. As part of the settlement agreement, Mr. Goodman's estate assigned all of its claims against GEICO to Mrs. Berendes.

41. The acts and omissions of GEICO were the result of willful and malicious conduct, or conduct that manifested a knowing and reckless indifference toward, and a disregard of, the rights of others, entitling the plaintiff to an award of punitive damages.

### FIRST CLAIM FOR RELIEF

42. The plaintiff realleges and incorporates by reference all preceding allegations as if fully set forth herein.

43. Without limitation, GEICO owed the following duties, among others, to Goodman:

    a.    A duty to conduct a prompt, reasonable, and diligent investigation of the facts of the case to determine the validity of Mrs. Berendes's claim;

    b.    A duty to evaluate the claim fairly;

    c.    A duty to attempt in good faith to effectuate a prompt, fair and equitable settlement of the claim, where liability was reasonably clear;

    d.    A duty to act promptly and reasonably in settling the claim;

    e.    A duty not to reject a reasonable and fair offer of settlement;

    f.    A duty not to put its insured through unnecessary litigation;

    g.    A duty not to put its insured's personal assets at risk;

    h.    A duty to pay valid claims against its insured timely;

    i.    A duty to refrain from actions that would injure the insured's ability to obtain the benefits of the contract; and

    j.    A duty of good faith and fair dealing.

44.    GEICO breached the duties it owed to Goodman by, among other things—

    a.    Failing to conduct a prompt, reasonable, and diligent investigation of Mrs. Berendes's claim;

    b.    Failing to evaluate the claim fairly;

    c.    Failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of the claim;

    d.    Not making a reasonable, timely, and unconditional offer to settle the claim;

-9-

  e. Not timely accepting and therefore rejecting a reasonable and fair offer of settlement;

  g. Putting its insured through unnecessary litigation;

  h. Putting its insured's personal assets at risk;

  i. Failing to pay promptly any part of Mrs. Berendes's claim against its insured; and

  j. Failing to pay its insured's liability as determined by the court.

45. As a direct and proximate result of GEICO's breaches of the duties it owed Goodman, GEICO's insured was exposed to liability in excess of its policy limits, was deprived of the benefits to which it was entitled, was forced to hire attorneys and incur expenses to protect itself and to obtain the benefits to which it was entitled, and has otherwise been damaged in amounts to be determined at trial.

46. Mrs. Berendes, as assignee of the Estate of Thad Goodman, is entitled to assert these claims against GEICO.

## SECOND CLAIM FOR RELIEF

47. The plaintiffs reallege and incorporate by reference all preceding allegations as if fully set forth herein.

48. GEICO owed Goodman a fiduciary duty to act for the benefit of and in the best interests of its insured and to give at least as much consideration to protecting the interests of its insured as it would to protecting its own interests.

-10-

03/17/2010 11:34 18585135197 GEICO CLMS 801-467-6805 PAGE 15/070
Mar 15 10 04:29p Hulbert Insurance Agency p.14

49. GEICO's duty required it to accept a settlement offer and participate in a settlement within the policy limits if there was a substantial likelihood that a judgment would be rendered against its insured in excess of those limits.

50. There was a substantial likelihood that a judgment would be rendered against GEICO's insured in excess of GEICO's policy limits.

51. GEICO unreasonably failed to timely and unconditionally accept and therefore rejected the Berendes's settlement offer and refused to participate in a settlement within the available policy limits when it had the opportunity to do so.

52. As a direct and proximate result of GEICO's breaches of the fiduciary duty it owed Goodman, its insured was exposed to liability in excess of its policy limits, was deprived of the benefits to which it was entitled, was forced to hire attorneys and incur expenses to obtain the benefits to which it was entitled, and has otherwise been damaged in amounts to be determined at trial.

53. Mrs. Berendes, as the assignee of the Estate of Thad Goodman, is entitled to assert these claims against GEICO.

### THIRD CLAIM FOR RELIEF

54. The plaintiffs reallege and incorporate by reference all preceding allegations as if fully set forth herein.

-11-

03/17/2010 11:34 18585135197 GEICO CLMS PAGE 16/20
Mar 15 10 04:29p Hulbert Insurance Agency 801-467-6805 p.15

55. Goodman provided GEICO timely notice of Mrs. Berendes's claim against it. GEICO was aware of the claim and chose not to participate in the hearing to determine the liability of its insured and Mrs. Berendes's damages.

56. A judgment has been entered in favor of Mrs. Berendes and against the Estate of Thad Goodman for $1.5 million.

57. GEICO insured the estate's liability to Mrs. Berendes.

58. Remedies in aid of execution of the judgment would be inadequate under the circumstances.

59. Mrs. Berendes is therefore entitled to enforce the judgment against GEICO.

WHEREFORE the plaintiff demands judgment against the defendant as follows:

1. For the amount of the judgment entered against the Estate of Thad Goodman and in favor of Tara Berendes;

2. For general damages in an amount to be determined at trial;

3. For special and consequential damages in an amount to be determined at trial, which include, without limitation, reasonable costs and attorney's fees incurred in defending against and settling Mrs. Berendes's claim and in bringing this action;

4. For costs, interest, and attorney's fees to the extent allowed by law;

5. For punitive damages to the extent allowed by law; and

6. For such other relief as the court deems appropriate.

## DEMAND FOR JURY TRIAL

The plaintiffs demand a jury trial of all issues triable by right by a jury, under Utah Rule of Civil Procedure 38(b).

DATED this 10th day of March, 2010.

DEWSNUP, KING & OLSEN

*Paul M. Simmons*

David R. Olsen
Paul M. Simmons
John C. Hansen
Attorneys for Plaintiffs

Plaintiffs' Address:

c/o Dewsnup, King & Olsen
36 S. State St., Suite 2400
Salt Lake City, UT 84111-0024

F:\DATA\dpetersen\DATA\Berendes\complaint.wpd

-13-